# THE SUPREME COURT

OF THE

# STATE OF UTAH.

FEBRUARY TERM, 1903.

(*Continued from Vol. 25.*)

GIOVANNI LAVAGNINO, Appellant, v. EDMUND H. UHLIG and ALEX McKERNAN, Respondents.

No. 1379. (71 Pac. 1046.)

**1. Mining Claims: U. S. Statutes Construed.**
Revised Statutes United States, section 452 [U. S. Comp. St. 1901, p. 257], prohibits officers, clerks, and employees in the General Land Office from purchasing public lands, while section 2319 [U. S. Comp. St. 1901, p. 1424], adopted subsequent thereto, declares public lands containing valuable mineral deposits open to purchase by citizens of the United States and those having declared their intention. Section 452 has been retained in all subsequent revisions of the statutes. *Held*, that the two sections must be construed together, and the former was not repealed.

**2. Same:**
Where Congress has passed an act in apparent conflict with a former enactment, the presumption is that it was aware of the existence of the first act, and acted in view thereof.

**3. Same: Decisions of Land Department as a Guide.**
Though the decisions of the United States Land Department, on matters of law, are not binding on courts, they should not be overruled unless they are clearly erroneous.

26 Utah—1

Lavagnino v. Uhlig and McKernan.

4. **Same: U. S. Mineral Surveyors Prohibited from Locating.**

Revised Statutes United States, section 452, prohibiting officers, clerks, and employees in the General Land Office from acquiring public lands, includes mineral surveyors of the government, and prohibits them from entering a mining claim or acquiring any right or interest in the purchase from the government, of such claim

5. **Same: Location by Same—Void.**

Under Revised Statutes United States, section 452, prohibiting officers, clerks, and employees of the General Land Office from purchasing or becoming interested in the purchase of public lands, the locating of a mining claim by a deputy mining surveyor of the government is void, and he can convey no rights in the claim to another.

6. **Same: Possession: Adverse Claimants: Filing Adverse Claim: Presumption.**

Under Revised Statutes United States, section 2325 [U. S. Comp. St. 1901, p. 1429], providing that it shall be presumed that there are no adverse claims to a mineral deposit for which application has been filed, unless they ar. filed within the sixty days during which notice of such application is required to be published, it will be conclusively presumed that one who fails to file an adverse claim within the prescribed time has none.

7. **Same: Purpose of Adverse Proceedings.**

The adverse proceedings authorized by Revised Statutes United States, section 2326 [U. S. Comp. St. 1901, p. 1430], providing that an adverse claimant to a mining claim shall institute proceedings in court to determine the right of possession of the claim, are not to determine the rights of the contestants to a patent, but to determine the right of possession of the disputed claim.

8. **Same: Rights of Third Party: Waiver of Rights.**

Where plaintiff, in an action to determine the right of possession to a disputed mining claim, fails to show, in chief, any right to the claim, he becomes a stranger to the title, and can not avail himself of any rights a third party may have had to the claim, where such third party has failed to file an adverse claim within the prescribed time.

9. **Same: Statute of Limitations.**

Revised Statutes United States, section 2332 [U. S. Comp. St. 1901, p. 1433], provides that where a party has held and worked his mining claim for a period equal to that prescribed by the statute of limitations for mining claims of the State where it is,

evidence thereof shall be sufficient to establish his right to a patent to the claim. Comp. Laws 1888, section 2997, subdivision 2 (Revised Statutes 1898, sec. 2498, subd. 10), provides that the words "real property" as used in the Code of Civil Procedure, shall include possessory rights and claims. Revised Statutes, section 2859, provides that adverse possession of real estate for seven years shall be a bar to a recovery thereof. *Held,* that a party who has failed to institute an action to recover possession of a mining claim within seven years after possession by another is barred from maintaining such action.

**10. Same: Nature.**
Under section 2997, subdivision 2, Comp. Laws Utah 1888 (sec. 2498, Rev. Stat. 1898, subd. 10), mining claims are real property and pass by deed.[1]

(Decided April 4, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall,* Judge.

Action by the plaintiff as the owner of the "Yes You Do" mining claim, in support of an adverse claim duly filed by the plaintiff, against the application of the defendants for a patent to the Uhlig No. 1 and the Uhlig No. 2 lode mining claims. From a decree in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*N. W. Sonnedecker, Esq.,* for appellant; *Charles C. Dey, Esq.,* of counsel.

The questions involved are: 1. Is the location of the "Yes You Do" void because made by a deputy United States mineral surveyor, who continued to retain a contingent interest in the claim, but who performed no acts in respect to the claim as such deputy? 2. Is it not competent to show upon the trial that the defendants' claims were invalid because at the time they

---

[1] Houtz v. Gisborn, 1 Utah 173.

were located the discovery of each of the claims was within the bounds of valid, subsisting, prior locations, and did the court not err in excluding the offer by plaintiff of his adverse claim, duly filed, etc., and excluding evidence offered showing the invalidity of the defendants' locations, "Uhlig No. 1" and "Uhlig No. 2?"

By section 2319, R. S. U. S., mineral lands are declared to be free and open to exploration and purchase by citizens of the United States.

The only question, therefore, is whether the right of a deputy mineral surveyor to acquire mineral lands is taken away by section 452, R. S. U. S. That section is as follows: "Sec. 452. The officers, clerks and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office."

This important question, whether a deputy mineral surveyor who makes no official survey or returns is prohibited by said section 452 from being interested in a mineral location, has received such able and exhaustive treatment in a brief prepared by Mr. Duane E. Fox, of the Washington. D. C., bar, that we shall quote extensively from his argument.

Section 452 must be strictly construed, being a statute against common right, as it operates exceptionally to the prejudice of particular persons. Sutherland on Stat. Con., sec. 366; Coleman v. Hart, 37 Wis. 180.

Applying the foregoing principles of construction to section 452, it is very evident that a mineral surveyor is not within its terms, for he is not an "officer, clerk or employee in the General Land Office." Unless he is clearly within one of the three classes mentioned, the statute can not be applied to him.

All the words are of common use and, applying the rule above stated, we will consider them in detail. But first let it be clearly understood what a "deputy mineral surveyor," so-called (for such designation is

not found in any statute), is and what are his duties. He is merely a person authorized by the surveyor general "to survey mining claims" for applicants for patent and at their expense. Any "competent surveyor" may make such surveys. "The surveyor general of the United States may appoint in each land district containing mineral lands as many competent surveyors as shall apply for appointment to survey mining claims." Section 2334, Rev. Stats. U. S.; Mining Circular of June 24, 1899, paragraph 92.

The statute requires no oath of office and no bond; but the department regulations require a bond and an oath as to the correctness of the surveys, as tending to insure the accuracy of the work. Mining Circular, paragraph 95.

He receives an "appointment" from the surveyor general, but such appointment, of itself, gives him no authority to exercise any official or other functions. Although holding such appointment, he can not perform a single act thereunder without further and special designation by the surveyor general to act in each particular case.

Nor does the Government, or its officers, undertake to furnish him with any work whatever. He will be designated by the surveyor general to make a survey only upon request by some applicant. After receiving his appointment, he may never make a survey. He may make fifty or more in a year. That depends upon his ability to find some private citizen who will employ him to do so. His duties are in no sense continuing or permanent but are occasional and temporary.

The Government pays him no compensation whatever for his services nor does it reimburse him for his expenses. If employed at all, he is employed by some private citizen and paid by him, if paid at all. He furnishes his own instruments and employs whatever assistants may be necessary to execute the work.

"Neither the surveyor general nor the commissioner of the General Land Office has jurisdiction to

settle differences, relative to the payment of charges for field work, between deputy mineral surveyors and claimants. These are matters of private contract and must be enforced in the ordinary manner, i. e., in the local courts." Manual of Instructions for the survey of the Mineral Lands of the United States, page 5.

The product of his work, when he has entirely completed it, has no official character and acquires none until approved by the surveyor general.

If then the status of a mineral surveyor is that of a private citizen up to the time when he files his survey notes with the surveyor general, is his status changed by that act, and does he then become an "officer, clerk or employee in the General Land Office?" Certainly not, for, at that moment, "the duty of the deputy mineral surveyor ceases." Mining Circular, paragraph 95. Nor can the subsequent approval of the survey have that effect.

With this knowledge of the duties of a mineral surveyor, and construing the statute either liberally, as might safely be done, or strictly, as must be done, is he an officer of the United States?

"An office is a public station, or employment, conferred by the appointment of Government. The term embraces the ideas of tenure, duration, emolument and duties." United States v. Hartwell, 6 Wall. 385; Mechem on Public Officers, sec. 4.

A mineral surveyor is not within this definition. Sovereign powers are exercised by virtue of the sovereignty and not by the permission of individuals. But, as shown in the preceding subdivision, a mineral surveyor can perform no act without the consent of the individual whose property is affected thereby.

Nor does the fact that a surveyor "appointed" under section 2334 is required by the department, though not by the statute, to give a bond, make him an officer. For the Government, in the exercise of the sovereign power, has the right "to enter into any contract not prohibited by law and found to be expedient in the just ex-

ercise of the powers confided to it by the Constitution.'' United States v. Hodson, 10 Wall. 395; 13 Opinions of the Attorney-General, 588; United States v. Maurice, 26 Federal Cases, page 1218.

Nor does the fact that a surveyor ''appointed'' under section 2334 is required by the department, though not by the statute, to take the official oath prescribed by section 1757, Rev. Stats. U. S., make him an officer. Throop v. Langdon, 40 Mich. 685.

There is no authority of law for requiring a surveyor of mining claims to take the oath of office, for such oath need only be taken by officers, as defined by the Constitution. 1 Decisions of Comptroller of the Treasury, 540; United States v. Hedrick, 16 Court of Claims Reports 88; 12 Opinions of the Atty.-Gen. 521.

A mineral surveyor is not a ''clerk in the General Land Office.'' ''A clerk is one employed in an office, public or private, for keeping records and accounts, whose business it is to write or register, in proper form, the transactions of the person, tribunal, or body for which he is clerk.'' Bouvier, Law Dictionary.

The duties of the clerks in the General Land Office are not different from those stated in the definition. Although they are intrusted with large discretion and responsibility, their acts, in legal contemplation, are only to register the acts of the commissioner, by whose signature effect is given to what they have done. The duties of a mineral surveyor are in no sense those of a clerk. He keeps no records or accounts, he registers no acts of any superior, he has no custody of public property or papers.

A mineral surveyor is not an ''employee in the General Land Office.'' An employee is one who is paid wages as distinguished from salary. People v. Meyers, 33 N. Y. S. R. 18; McCluskey v. Cromwell, 11 N. Y. 593; Maillard v. Lawrence, 16 How. 261.

A mineral surveyor receives from the Government neither salary nor wages, nor any compensation whatever, and is not therefore an employee of the Govern-

ment. Unless the Government would be liable for his compensation, either originally or upon default of the applicant who engaged his services, he does not sustain that relation to the Government. United States v. Meigs, 95 U. S. 748; Gilmore v. Simpson, 16 L. D. 549.

The prohibition of section 452 applies to "officers, clerks and employees in the General Land Office," and to no others. The word "in" ought to need no definition. Its plain and ordinary meaning is "inside of" or "within" and that meaning is sufficient to satisfy the statute. Grandy v. Bedell, 2 L. D. 315.

A mineral surveyor is not "in" the General Land Office; he performs no duties there and he is not listed in the Government Blue Book as a part of its personnel. To apply the statute to him requires a violent strain of the word used, which the law does not permit. Gilmore v. Simpson, 16 L. D. 549; Washington Market Company v. Hoffman, 101 U. S. 112; Platt v. Union Pacific Railroad Co., 98 U. S. 48; Kohlsaat v. Murphy, 96 U. S. 153.

We have shown that the real status of a mineral surveyor is that of a contractor with the applicant for patent. What relation, then, does he sustain to the Government of the United States? We submit that he is a mere licensee, his duties being transient and occasional. Wardlaw, admr., v. Mayor, etc., of New York, 46 N. Y. 862.

The court below erred in refusing to admit proof offered by plaintiff of due filing of an adverse claim, also proof offered to show defendants' claims invalid. That court, under its construction of sections 2325 and 2326, R. S. U. S., and the supplemental act to the latter section of March 3, 1881, held, that the plaintiff having failed to establish a valid title to the "Yes You Do," and there being no adverse claim before the court, plaintiff could not give evidence to prove that at the time of the location of the "Uhlig No. 1" and the "Uhlig No. 2," the discoveries of both of said claims and the ground embraced therein were included within two valid and subsisting claims, the Levi P. and the Veta. We submit

that the court's ruling in this particular was clearly erroneous.    While it is true that no claim could be made on behalf of the "Levi P." and "Veta" in their own right, against the "Uhlig No. 1" and the "Uhlig No. 2," without their first having made a proper protest and adverse claim in the land office, yet it is equally clear that when the title to the Uhligs is assailed by a third party, claiming under an entirely distinct and independent location, that under the issue tendered by defendants' answer, evidence offered by plaintiff is admissible to defeat the defendants' title by showing a valid title to the ground in some one else when defendants' rights were attempted to be initiated.    Harrington v. Chambers, 3 Utah 94; Girard v. Carson, 44 Pac. 508; Gwillim v. Donnellan, 115 U. S. 45; Armstrong v. Lower, 6 Colo. 393; Manning v. Strehlow, 11 Colo. 453; 18 Pac. 625; Shattuck v. Costello, 68 Pac. 529.

The decisions under the act of March 3, 1881, and section 2326, are that each party is practically a plaintiff and must show his title, not only as against his adversary, but also as against the United States; each must rely on the strength of his own title and not the weakness of that of his adversary.    Jackson v. Roby, 109 U. S. 440; Gwillim v. Donnellan, 115 U. S. 50; Rosenthal v. Ives, 12 Pac. 904; Murray Hill M. & M. Co. v. Havenor (Utah), 66 Pac. 762; Bay State M. Co. v. Brown, 21 Fed. 167; Shattuck v. Costello, 68 Pac. 529.

Of course the same rule applies to a defendant claiming affirmatively under an answer as to a plaintiff. 14 Ency. Pl. and Pr., 20; Jackson v. Roby, 109 U. S. 440; Murray Hill M. & M. Co. v. Havenor (Utah), 66 Pac. 762; Rosenthal v. Ivers, 12 Pac. 906; Bay State S. M. Co. v. Brown, 21 Fed. 167; Shattuck v. Costello, 68 Pac. 529.

*Messrs. Pierce, Critchlow & Barrette, D. H. Wenger, Esq.,* and *Messrs. Brown & Henderson* for respondents.

Was the "Yes You Do" mining claim, upon which plaintiff and appellant relies, a valid mineral location, it being admitted that at the date of its location, January 1, 1898, the locator, J. Fewson Smith, Jr., was a deputy mineral surveyor for the district of Utah, and that ever since its location he has retained and still does retain an interest in said claim? Sections 453 and 2478, R. S. U. S., show the complete supervision which the commissioner of the general land office has over the surveyors of the public domain. This court will take judicial notice of the fact that these deputy mineral surveyors are treated and relied upon by the surveyor general of the district for which they are appointed as the working field force of the office. They are required by section 90 of the Rules and Regulations, to enter into such bond, for the faithful performance of their duties, as may be prescribed by the regulations of the land department in force at that time. "It is a well settled rule of law that the power to make and correct surveys of the public lands belongs exclusively to the political department of the Government and that the action of that department within the scope of its authority is unassailable in the courts except by a direct proceeding." Knight v. U. S. Land Association, 142 U. S. 161, cited and approved in Gardner v. Bonestell, 180 U. S. 369; Cragin v. Powell, 128 U. S. 591; Bishop of Nesqually v. Gibbon, 158 U. S. 155.

It certainly cannot be contended that in exercising this important power of correctly and impartially surveying the lands of the United States the land department has not the absolute control over the officers or agents through which it acts. Even if section 452 had never been enacted by Congress, the Secretary of the Interior might very properly have formulated a rule forbidding deputy United States mineral surveyors from locating mining claims. The considerations of policy which would support such a rule are fully set forth in the decisions of the land department, above noted. We repeat, therefore, that however sound or convincing

as a legal exposition the brief of appellant may be regarded, it is addressed in this case to the wrong tribunal, and so long as the Department of the Interior holds to its ruling upon this question the courts are bound to recognize and enforce it.

Even if it should be regarded as a matter into which this court or any court of law might inquire, the practical construction given by the land department to the provisions of section 452 would be regarded as most persuasive, and certainly be followed. Hastings etc. Co. v. Whitney, 132 U. S. 357.

Had the plaintiff, who had offered no evidence legally tending to connect himself with the lands embraced within the Uhlig locations, still a right in this suit upon an adverse claim to offer evidence under the supplemental Act of March 3, 1881, tending to show that at the date of location of the Uhlig claims the land was not subject to location? The ruling of the court is so manifestly correct and sustained by all reason and authority that one cannot but be surprised that learned counsel, who tried the case below and who now appear to urge their assignment of error, could have so far mistaken the law on the subject. A very brief consideration of the statutes of the United States governing actions of this kind will show the unreasonableness of appellant's contention. Section 2325, Revised Statutes United States, sets out in detail the manner of procedure for obtaining a United States patent. This is so familiar to us all that it is not necessary to recapitulate it here. Stated in brief, however, it is that the filing of the application for patent and publication of notice of such application brings in any and every person who may lay claim to the ground for which patent is sought or for any reason object to the pending application. These persons may come in either by an adverse claim upon which suit is to be brought within a specified time in a court of competent jurisdiction, or by protest, which latter is made in the land department and requires no suit to sustain it. The distinction between

protest and adverse claim is clearly set forth in 2 Lind-
ley on Mines, sec. 712.    If any person claim the land
applied for it is his duty to file his adverse claim and
follow it up with a suit, and his failure so to do operates
as a waiver of all rights which were the proper subject
of such a claim.    2 Lindley on Mines, sec. 742.

The meaning of this provision is that if no adverse
claim be filed all third persons are thereafter barred
from consideration, and the only parties left dealing
with each other are the United States and the applicant,
save only that by protest a third party may show that
the applicant has failed to comply with the terms of the
chapter pertaining to the location and entry of mineral
lands and the patenting thereof.    So far as an adverse
claim cognizable by the courts is concerned the proceed-
ing must be begun by the filing of such adverse claim
in the land office followed up by suit, and if this be not
done the assumption which is absolutely conclusive is
that the applicant is the prior locator and that all other
persons who might otherwise have claimed the land have
finally and forever waived any right to it.    Upon this
assumption the United States proceeds without heeding
any interference by persons claiming themselves to be
prior locators, and sells the land to the applicant.    It is
a matter of common learning that frequently prior loca-
tors lose their right and the land is patented to the
holder of the junior location, and that this result is ac-
complished simply through the failure to file an adverse
claim in proper season.

When, therefore, the plaintiff in this case attempted
to introduce evidence tending to show that not he but
Mayberry held this mineral ground by a valid location
in 1889 when the Uhlig claims were located, he was met
by the absolute and positive provision of the statute to
the effect that Mr. Mayberry and any and every other
person whomsoever, excepting only the plaintiff in this
case, had waived all right to the ground in controversy,
and further by an assumption or presumption absolutely
binding and conclusive upon the courts that whatever

claim Mr. Mayberry had in the land was inferior to the rights of the defendants to patent the ground.

### STATEMENT OF FACTS.

The defendants, Edmund H. Uhlig and Alex Mc-Kernan, on or about the 24th day of August, 1898, made an application in the United States land office at Salt Lake City for a patent for the Uhlig No. 1 and Uhlig No. 2 mining claims. The plaintiff in due time filed in the said land office an adverse claim to a portion of the said Uhlig No. 1 and No. 2, which overlapped and included a part of the Yes You Do mining claim. Thereupon further proceedings on said application were stayed in the land office, and the plaintiff in due time instituted this action to determine, as provided in section 2326 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1430), the right to the possession of the portion of the Uhlig Nos. 1 and 2 which conflict with the Yes You Do.

It appears from the record that the summons in respect to the defendant Alex McKernan was quashed, and the action as to him was discontinued; that, pending the action, which was not dismissed as to the co-defendant Edmund H. Uhlig, and before the trial, he conveyed his interest in the Uhlig Nos. 1 and 2 to the St. Joe Mining Company, a corporation organized under the laws of the State of Utah, and said company was substituted as defendant in place of the said Edmund H. Uhlig. The trial court adjudged and decreed that the St. Joe Mining Company and the said Alex McKernan are the owners in possession, and entitled to the possession, except as against the paramount title of the United States, of the premises in dispute (which were described in the decree by metes and bounds), and that the defendant recover its costs, etc. From this decree the plaintiff has taken an appeal.

It appears from the testimony of J. Fewson Smith, Jr., a witness for the plaintiff, that he located the Yes

You Do on the 1st day of January, 1898; that at that time, and at the time of the trial, he was a deputy United States mineral surveyor "attached to the office of the surveyor general of the district of Utah;" that he had an interest in the litigation; that, between the time of making said location and the time of filing the protest in the land office by the plaintiff, he agreed with plaintiff to convey to him the Yes You Do mining claim for the consideration of $1, and the sum of $600, the future payment of which depended upon the conditional stipulations, the substance of which is as follows: If a patent for said claim should be obtained without litigation, Lavagnino, the plaintiff, was to pay $600, but if there was litigation through any source in respect to said claim, and a failure to procure patent for the same, then no part of the $600 was to be paid for the conveyance. In case there was such litigation, then the said Smith was only to be paid said sum less the expense of patenting the claim, if one should be obtained; but if a patent was only obtained for a small triangle, or part of the claim, the plaintiff might refuse to pay the remainder of the consideration. In pursuance of the foregoing agreement, the claim was deeded to the said plaintiff by Smith, but the only consideration named therein was the sum of $1. The said Smith also testified that "when he transferred the ground to Lavagnino it was for the purpose of defeating these other claims, and not with a view of making much;" and, having further testified that he made the plat showing the conflict in question in this case, he was asked, on cross-examination, the following question: "Isn't it a fact that you, being a deputy United States mineral surveyor, couldn't make the survey and protest for your claim if you held it in your own name, and you consequently turned it over to Mr. Lavagnino? A. It is a fact that I couldn't make the protest in my own name while I held an interest in the claim."

After the disclosure of the foregoing facts the plaintiff offered in evidence a certified copy of the location

notice of the Yes You Do, and in connection therewith the deed to Lavagnino. To this offer the defendants objected upon the grounds, which, in substance, were as follows: That by the testimony of the witness J. Fewson Smith, Jr., it appears that said mining claim was not located by a person who had the power, under the act of Congress, to locate mineral ground, it appearing from the testimony of the witness that he was at the time mentioned—January 1, 1898—a deputy United States mineral surveyor for Utah, and therefore incompetent to make locations; that in this particular action it now appears that the witness, at the time he made the protest map, plat, and the survey fixing the boundaries for the purpose of an adverse claim and protest introduced in the land office, was himself a deputy United States mineral surveyor, interested in the action, as he himself has stated; therefore the location itself was in violation of the law, and could not be the basis either of a valid location in himself or a deed to anybody.

The trial court excluded the said notice and deed on the ground that "J. Fewson Smith, Jr., the locator of the claim, was prohibited from making the location of a lode mining claim, and, therefore, had not the qualifications to initiate any title by any act that he did with reference to locating the Yes You Do mining claim." The plaintiff, after duly excepting to the ruling of the court, rested. The defendants then proceeded to introduce evidence in support of the validity of the Uhlig Nos. 1 and 2 mining claims, after which, in rebuttal, the plaintiff offered to show that the "Levi P." and "Veta" mining claims, at the time of the location of the Uhlig Nos. 1 and 2, were valid and subsisting claims, and covered the discoveries of both the Uhlig No. 1 and No. 2, and were then owned by Andrew P. Mayberry. Mr. Sonnedecker, an attorney of the plaintiff, offered to make the same showing "on behalf of the Government and as a friend of the court." Defendants' counsel objected to this on the ground that it was immaterial; "that the court was without jurisdiction to listen to and

decide an issue of that kind, the United States not being before the court in that sense." The trial court sustained the objection on the ground that, as no adverse claim based upon the "Levi P." and "Veta" claims had been made within the prescribed period, whatever rights the parties may have had to said claims were waived by failure to properly adverse the application for a patent by the defendants.

It does not appear from the record that any adverse claim whatever, based upon the Levi P. or Veta, was made in the land office in the matter of the defendants' application for a patent of the Uhlig Nos. 1 and 2, nor does the plaintiff claim any interest in said mining claims.

BASKIN, C. J., after stating the facts, delivered the opinion of the court.

The refusal to permit the certified copy of the location notice of the Yes You Do, and the deed offered in connection therewith, to be introduced in evidence, and the rejection of the evidence relating to the Levi P. and Veta mining claims, is assigned as error.

Section 452, Rev. St. U. S. (U. S. Comp. St. 1901, p. 257), provides: "The officers, clerks, and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office." Subsequent to the enactment of this section, section 2319, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1424), was passed, and is as follows: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining

districts, so far as the same are not inconsistent with the laws of the United States.'' The former section has been retained in all of the revisions of said statutes made since its enactment. These sections are therefore *in pari materia,* and must be construed together, and, if possible, made to harmonize, and not to violate, the general public policy which it is evident the former was enacted to prevent. 1 Kent, Comm. (13 Ed.), p. 464; Manuel v. Manuel, 13 Ohio St. 458, 464, 465. The presumption is that Congress, when the latter section was passed, was aware of the existence of the former, and acted in view of that fact. As the former section has not in terms been repealed, but has been retained in each of the revised editions of the United States statutes, it must be presumed that Congress intended it to remain in full force, notwithstanding the provisions of the latter section; or, in other words, it was the intention of Congress to prohibit, on the ground of public policy, the officers, clerks, and employees in the General Land Office from acquiring, directly or indirectly, an interest in the purchase from the Government of any of the public land of the United States.

It is clear from the testimony of J. Fewson Smith, Jr., in this case, that his right to the unpaid consideration for the conveyance of the Yes You Do was wholly dependent upon the purchase or entry of the same, and to that extent he was interested in the entry—or in the purchase, which is the same as an interest in the entry—sought by Lavagnino. One dollar is the only consideration actually paid by Lavagnino to Smith. Both of the parties at the time anticipated litigation. Smith, in addition to his testimony before referred to, stated: ''Somebody would have to stand the expense of the litigation if there was any, and, since I could not make a sale to Mr. Lavagnino out and out, I just let him take it at his own terms, with the understanding that if the claim was given to him clear, that is, if there was litigation through any source and he got the claim through

for patent clear, then I was to receive, in addition to what I got that day, a certain sum of money. This arrangement was in 1898, between the time of making the location and the time of entering the protest. It would be somewhere about the middle of the summer, I should think. I received one dollar in cash. That was to bind the bargain. If he doesn't get the ground I get nothing further.''

Before making the adverse claim and bringing this suit, Lavagnino knew that Smith was a deputy United States mineral surveyor, for Smith, as such, made the survey and plat filed in the land office with the adverse claim; so that, if section 452 includes deputy mineral surveyors, Lavagnino, before expending any sum except one dollar, was at that time advised of the fact, if he was not before, that his agreement with Smith was in violation of the provisions of said section, and that the conveyance of the Yes You Do for that reason was invalid. The latest decisions of the Secretary of the Interior hold that under section 452, Rev. St. U. S., "a deputy mineral surveyor, while holding such office, is disqualified as a mineral entryman." Floyd v. Montgomery, 26 Land Dec. Dept. Int. 122; Frank A. Maxwell, 29 Land Dec. Dept. Int. 76. Our attention has not been called to any decision of a court touching the question, and while the decisions of the Land Department, on matters of law, are not binding upon the courts, they should not be overruled except when they are clearly erroneous. Hastings, etc., Co. v. Whitney, 132 U. S. 357, 366, 10 Sup. Ct. 112, 33 L. Ed. 363, and cases there cited. We think that the section in question includes mineral surveyors, and prohibits them, as held by the Land Department, from entering any of the public lands while they are such deputies, and also from directly or indirectly acquiring any interest in the purchase from the Government of the same. It follows that J. Fewson Smith, Jr., while he was a deputy mineral surveyor, was prohibited by said section from

entering a mining claim or directly or indirectly acquiring any right or interest in the purchase from the Government of such a claim. He was also prohibited at that time from doing any of the acts upon the performance of which, under the provisions of the mining law of 1872, the right of making an entry or purchase from the Government depends, and that his location of the Yes You Do was therefore void, and Lavagnino acquired no rights under the deed from him to the same.

The failure of the plaintiff to show, in chief, any right to the premises in controversy, disclosed the fact that he was "a stranger to the title" of the premises in dispute, and that a nonsuit could, on motion, have been properly granted. So that a failure to establish the defendants' claim could in no way benefit him or validate his alleged title to the Yes You Do. Therefore the plaintiff had no more interest in or right to further contest the defendants' claim, on the ground that the Levi P. and Veta were valid and subsisting claims, than the said Andrew P. Mayberry himself or any other stranger had.

Section 2325, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1429), provides that: "If no adverse claim shall have been filed with the register and the receiver of the proper landoffice at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter."

In the case of The Eureka Min. Co. v. The Richmond, 4 Sawy. 302, Fed. Cas. No. 4548, it was held, in the opinion delivered by Mr. Justice Field, that "under the mining act of 1872, where one is seeking a patent for his mining location, and gives the prescribed notice, any other claimant of an unpatented location objecting

to the patent on account of extent or form, or because of asserted prior location. must come forward with his objections and present them, or he will be afterwards precluded from objecting to the issue of the patent." The rule thus laid down has been adhered to ever since its announcement, both by the courts and the Land Department.

In the case of Wight v. Dubois (C. C.), 21 Fed. 693-696, Mr. Justice Brewer, in the opinion, summed up the propositions decided therein as follows: "First, the Government, as a landowner, offers its lands for sale upon certain prescribed conditions, compliance with which is a matter of settlement between the owner and purchaser alone, and with which no stranger to the title can interfere. Second, publication of notice is process bringing all adverse claimants into court, and if no adverse claims are presented it is conclusively presumed that none exist, and that no third parties have any rights or equities in the land. Third, thereafter the only right or privilege remaining to any third parties is that of protest or objection filed with the Land Department, and cognizable there only."

In Golden Reward Mining Co. v. Buxton Min. Co. (C. C.) 79 Fed. 868-874, the same distinguished judge, after quoting section 2325 of the Revised Statutes, said: "The expression 'it shall be assumed' must be construed to mean 'conclusively assumed,' as any other construction would defeat the object of the statute."

In Burnside et al. v. O'Connor et al., 30 Land Dec. Dept. Int. 67-70, Secretary Hitchcock, after quoting the same section, said: "The Hibernia having failed to file an adverse claim against the Mary Navin during the latter's period of publication, it must be assumed that no such adverse claim exists, and the department cannot now hear any objection from the Hibernia claimants to the issuance of patent for the Mary Navin, based merely on an assertion of prior right to a portion of the land included in the Mary Navin entry. The provisions of the statute are clear, and as the Hibernia claimants

have, by their own negligence, placed themselves in such a position relative to the Mary Navin application that it must be assumed they have no adverse claim against said application, it is useless to suspend the Mary Navin entry to await the result of the suit by the Mary Navin against the Hibernia."

In Branagan v. Dulaney, 2 Land Dec. Dept. Int. 744, Secretary Teller said: "It has been the practice of the land office not to inquire as to the status of the original or prior location when the discovery is made within the boundaries thereof, unless an application for patent has been made for such original or prior location. If the owner of the original or prior location neglects to adverse the application for a patent to the junior location, it must be assumed, under the provisions of section 2325 of the Revised Statutes, that the claimant of such junior location is entitled to a patent as against the claims of the prior locator."

In the Matter of the Nevada Lode, 16 Land Dec. Dept. Int. 532, it was held that "A charge of non-compliance with law against a mineral entry made by a protestant may properly form the basis of a hearing, but the protestant in such a case is not entitled to set up his own claim to the land."

In American Consol. M. & M. Co. v. DeWitt, 26 Land Dec. Dept. Int. 580, it appears that De Witt made application for a patent for the Maryland mining claim, and that the American company afterwards protested, and one of the grounds of the protest was that the "Maryland was not a valid location, in that the discovery therein was on the Orbit claim, a prior and subsisting location, and not upon unappropriated public land; that the Orbit vein was the only one discovered within the limits of the Maryland." Secretary Bliss, in ruling adversely to the protestant, said: "Whether the ground which includes the Maryland discovery is a part of the Maryland, or a part of the Orbit, and whether the Maryland is the superior claim to the ground in conflict, are questions which were open to determination

by adverse proceedings in the local courts, and which are now determined adversely to protestant's contention, by reason of its failure to adverse the Maryland's application (section 2325)."

The evident intention of the adverse proceedings authorized by section 2326 of the Revised Statutes (U. S. Comp. St. 1901, p. 1430) is not to determine any of the rights of the United States, or the rights of the contestants to a patent, but, in aid of and for the information of the Land Department, to determine, as between the litigants, the right to the possession of the mining claim in dispute.

In Doe v. Waterloo Min. Co., 17 C. C. A. 190, 70 Fed. 455-462, after quoting section 2326 of the Revised Statutes, the court said: "There is no authority in the statute to find against the United States, and that the party so establishing title is entitled to a patent from the United States. The United States is not named as a party. The suit does not purport to be one against the United States. No authority is given by the statute to sue the United States in such a matter. The application for a patent for mineral land is made to the Land Department of the United States. Ultimately that department must determine the right to the patent. The trial of the right to the possession of a given tract of mineral land is a proceeding in aid of that department. It was not intended that when this issue was presented to a court it should operate as a transfer of the whole case made by the application, and that thereafter the Land Department would have nothing to do but to carry into effect the judgment of the court. A state court of general jurisdiction has the power to determine this issue, and such courts are often called upon to try causes arising under the said section 2326. Can it be supposed that it was intended that under the said statute such a court would have the power to determine whether or not the United States should issue a patent to any applicants? The power to sue the United States in a State court should rest upon some positive statute. It cannot be

inferred from such a statute as the one in question.''
To the same effect see Wight v. Dubois (C. C.), 21 Fed.
694.

We think it is clear, both from the language of the sections of the Revised Statutes referred to and the authorities cited, that it must, as stated by Mr. Justice Brewer, be conclusively presumed that Andrew P. Mayberry, as he failed to make any adverse claim, had none, and, as the plaintiff failed to show any right to the disputed premises, he became a stranger to the title, and thereafter had no more right than any other stranger to further contest the defendants' claim. While Mayberry has the right, like any stranger, to protest, he cannot do so on the basis of any rights he may have had in either the Levi P. or Veta mining claims. It follows that he conclusively waived his right to do so by failing to file an adverse claim, and that the plaintiff in this case, and all other strangers to the title, are likewise precluded from protesting on like grounds.

The trial court found that ''on or about the 1st day of January, 1889, one Edmund H. Uhlig, then and there a citizen of the United States, entered upon the unoccupied and unappropriated mineral lands of the United States in West Mountain mining district, Salt Lake county, State of Utah, and, having discovered thereon a lode of mineral-bearing rock in place, bearing lead, iron, silver, and other minerals, did then and there locate the same as the 'Uhlig No. 1' and 'Uhlig No. 2' lode mining claims, by marking the boundaries thereof upon the ground by suitable monuments, so that the boundaries thereof could be readily traced, and by posting at the points of discovery upon said mining claims, respectively, notices of location, describing the same by reference to natural objects and permanent monuments; that thereafter he caused copies of said notices of location, respectively, to be filed and recorded in the office of the district recorder of said West Mountain mining district. That thereafter the said Edmund H. Uhlig and the defendant, the St. Joe Mining Company re-

mained in possession of said mining claims, working and developing the same, and causing to be done thereon and for the benefit of said claims, in each and every year up to and including the year 1900, the annual assessment work required by the laws of the United States.''

The application for a patent for the Uhlig Nos. 1 and 2 was made on August 24, 1898. The Yes You Do was located on the 1st day of January, 1898, eight years after the location of the Uhlig Nos. 1 and 2.

Section 2332, Rev. St. (U. S. Comp. St. 1901, p. 1433), provides that ''where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State and Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; but nothing in this chapter shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property attached prior to the issuance of a patent.''

Section 2997, subd. 2, Comp. Laws Utah 1888, provides that the words ''real property as used in the Code of Civil Procedure, unless otherwise apparent from the context, are co-extensive with lands, tenements and hereditaments, water rights, and possessory rights and claims.''

The Territorial Supreme Court, in Houtz v. Gisborn, 1 Utah 173-176, held that, under said section, mining claims are real property and pass by deed. There are numerous authorities which hold (without regard to statutory provision) that mining claims are real estate. 1 Lindley on Mines, sec. 535; Barringer & Adams Law of Mining, p. 568 et seq.; Aspen Min. & S. Co. v. Rucker (C. C.) 28 Fed. 222, and cases cited; Harris v. Equator Min. Co. (C. C.) 8 Fed. 863; Hughes v. Devlin, 23 Cal. 506; Roseville Min. Co. v. Iowa Min.

Co., 15 Colo. 29, 24 Pac. 920, 22 Am. St. Rep. 373; Mc-
Feters v. Pierson, 15 Colo. 201, 24 Pac. 1076, 22 Am.
St. Rep. 388.

Section 2332 is applicable to lode mining claims.
2 Lindley on Mines, sec. 688; Harris v. Equator Min. Co.
(C. C.) 8 Fed. 863; Altoona Min. Co. v. Integral Min.
Co. 114 Cal. 100, 45 Pac. 1047; Belk v. Meagher, 104 U.
S. 279-287, 26 L. Ed. 735. In the last-mentioned case
(page 287) after quoting section 2332, the court, speak-
ing through Mr. Chief Justice Waite, said: "Under
the provisions of the Revised Statutes relied on, Belk
could not get a patent for the claim he attempted to
locate, unless he secured what is here made the equiva-
lent of a valid location, by actually holding and working
for the requisite time. If he actually held possession
and worked the claim long enough, and kept all others
out, his right to a patent would be complete." In the
case of Altoona Quicksilver Min. Co. v. Mining Co., 114
Cal. 105, 45 Pac. 1048, Mr. Justice Temple, in connec-
tion with said section, said: "It must therefore follow
that where such possession has continued for five years
before the adverse right exists, it is equivalent to a loca-
tion under the laws of Congress," and in support there-
of cites Harris v. Equator Min. Co., supra, Belk v.
Meagher, supra, and Anthony v. Jillson, 83 Cal. 296, 23
Pac. 419.

Subdivision 2, sec. 2997, Comp. Laws 1888, is still
in Rev. St. 1898, subd. 10, sec. 2498.

A mining claim being a possessory right, it is real
estate under the provisions of the statutes of Utah be-
fore referred to, and any claim which Mayberry might
have had, as he failed to institute a suit to recover the
same within seven years after the possession of the
Uhlig Nos. 1 and 2, as found by the trial court, began,
was barred by section 2859, of the Revised Statutes of
Utah, which is as follows: "No action for the recovery
of real property, or for the possession thereof, shall be
maintained, unless it appear that the plaintiff, his an-
cestor, grantor, or predecessor was seized or possessed

of the property in question within seven years before the commencement of the action.'' It was also waived by his failure to adverse the application for a patent of the Uhlig Nos. 1 and 2. In view of these facts, the plaintiff, even if J. Fewson Smith, Jr., had not been a deputy United States mineral surveyor, as the location of the Yes You Do was not made until eight years after the said possession of the Uhlig Nos. 1 and 2 was begun, could not avail himself of any rights which the said Mayberry may have had.

The objection to the admission in evidence of the certified copy of the notice of location of the Yes You Do and the deed to Lavagnino, offered in connection there-with, and the objection to the evidence relating to the Levi P. and Veta mining claims were properly sustained.

The decree of the court below is affirmed, with costs.

BARTCH, J., and HART, District Judge, concur.