## GREER *v.* GRIFFIS-NEWBERN COMPANY.

### Opinion delivered October 16, 1916.

1.  HOMESTEAD—ACQUISITION OF RIGHT—OUTSTANDING CLAIM.—Appellant cannot acquire a homestead in his own right, so long as there is an outstanding right of homestead in the lands existing in another.
2.  HOMESTEAD—ACQUISITION OF RIGHT.—Where appellant came into possession and ownership of certain lands by inheritance, *held* under the facts, that his residence upon and occupancy of the same was insufficient to impress upon the land the character of a homestead.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; affirmed.

#### STATEMENT BY THE COURT.

The appellee obtained a judgment against appellant in the sum of $2,424.09 and caused execution to be issued, which was levied upon a certain tract of land in Lee County as the property of appellant. Appellant filed his schedule with the clerk of the circuit court, claiming the lands as a homestead. Supersedeas was issued by the clerk. The appellee moved to quash the supersedeas. Upon a trial of the issues raised by the motion, appellant testified substantially as follows:

The land in controversy belonged to his father who, at the time of his death, occupied the land as his homestead. Appellant's father died in 1899, leaving a widow, appellant's step-mother, a daughter and appellant surviving him. Appellant, at the time of his father's death, was twenty-five years of age. He lived with his father and continued to live on the place after his father's death with his step-mother and half sister until the first of February, 1900. Appellant managed the place for his step-mother and his sister until they moved to Marianna. They were cropping the place in 1900 and appellant looked after it, continuing to live on it. Appellant did not at that time own any other land. His step-mother died in 1903, when his sister was still a small girl. His sister died in 1911, before she was 21 years of age. After the mother died the sister went to live with her guardian and was living with him at the time of her death.

Appellant, after his sister's death, rented out the place and had had a room there since 1912. Had farmed the place and made a crop there himself. Appellant married in 1908. His wife and children lived continuously in Marianna. They never lived on the place in controversy. Appellant did not own any lots in Marianna. Had bought some but had not finished paying for them. His property usually was assessed in Bear Creek township. Appellant sometimes voted in Bear Creek township and sometimes in Marianna. Appellant made a crop on the place in controversy in 1902. From 1902 to 1912 the place was rented to negro tenants. Appellant did not come into the possession of the place in his own right until the death of his sister in 1911, and in 1912 he went down to make a crop and moved into a little room 12 by 14, where he had a bedstead, bedding, a stove and chairs. The wife of a negro tenant cooked for him. He stayed there pretty regularly during the year 1912; would come home two or three times a week. Appellant stated that he recognized that his sister had a right in the homestead until she became of age.

The court found that appellant "abandoned whatever interest he may have had in the homestead." Judgment was entered quashing the supersedeas.

*H. F. Roleson,* for appellant.

The testimony fails to show an abandonment of his homestead right. It does show that after old man Greer died, appellant took charge of the place and affairs of the family and impressed the lands with the character of a homestead. 71 Ark. 206; 42 *Id.* 175; 35 *Id.* 49; 41 *Id.* 94; 39 *Id.* 301; 56 *Id.* 621. It was always his intention to claim it as his homestead; that he expected to move his family on it and that he lived there most of the time. 69 Ark. 596. The question of intention is a large element in homestead matters and claims and exemption laws of homesteads are liberally construed in favor of claimants. 55 Ark. 65; 65 *Id.* 373.

*D. S. Plummer* and *Daggett & Daggett,* for appellee.

1.   Conceding that appellant had a homestead right at the death of John H. Greer, it is shown he abandoned it for ten years or more and it is necessary for him to show by his actions the intention, at least, to impress the characteristics of a homestead on the lands. His acts show otherwise.   The case, 71 Ark. 206, and others cited, have no application, for in such cases the claimant who had acquired the right as head of a family, continued to reside on the land after the loss of family.   57 Ark. 181; 22 *Id.* 402; 29 *Id.* 280; 76 *Id.* 575; 31 *Id.* 466.

2.   Nor does 69 Ark. 596 apply for the reason that the intention to occupy was manifested by acts clearly showing such intention and actual occupancy was only prevented by sickness.   In this case *bona fide* intention to occupy is not shown.   The evidence clearly shows that the homestead claim is a mere subterfuge to defeat a judgment.

WOOD, J. (after stating the facts.)

(1)   Appellant could not acquire a homestead in his own right so long as there was an outstanding right of homestead in his sister.   *Brooks* v. *Goodwin,* 123 Ark. 607. See also *Kulbeth* v. *Drew County Timber Co.,* 125 Ark. 291.

Upon the death of his sister, appellant came into possession of the property by virtue of his right of inheritance, and he could only ground a claim of homestead after having impressed and occupied it as such.

(2)   A preponderance of the evidence shows that appellant was not entitled to have the lands declared exempt from execution under his claim of homestead, and the court's judgment was correct, even though the court may have given an erroneous reason for it. The evidence shows that appellant never impressed the land with the character of homestead.

This court, in *Tillar* v. *Bass,* 57 Ark. 179, 183, upon a somewhat similar state of facts, said:   "He (the homestead claimant) testified that his intention,

during the entire time that he owned it, was to make it his home, and that he considered it his home after he built the new house and moved his bed, but his occupancy before and after he built the new house, and until he moved his family, was of the same character, he working and sleeping there while cultivating and gathering crops. There was no evidence that he moved his household goods, domestic animals and other property, which usually attend the change from one to another home in the country. His family remained away. His stay was more like camping than a residence. It was not home-like. In short, there was no evidence to show that he actually and in good faith occupied his land as a residence before the levy of the execution."

In *Gebhart* v. *Merchant*, 84 Ark. 359, we held that the "occupancy of a dwelling house with the intention of making it a homestead sometime in the future does not constitute an impressment upon it of the homestead character."

Appellant's family had never been upon the land in controversy and the character of the appellant's occupancy was not such as to constitute a homestead.

The judgment is, therefore, affirmed.