RETTIG et al. v. HOUSTON WEST END REALTY CO. (No. 453–3840.)

(Commission of Appeals of Texas, Section A. Oct. 10, 1923.)

1. **Homestead ⊜143—Permission to son to occupy house on homestead does not give him a homestead while father lived.**

Where surviving husband continued to reside in the homestead, and never relinquished any specific tract or portion thereof, but merely permitted his son to live in the house which the son had built thereon, the son did not acquire a homestead interest in the land while the father lived, though at his mother's death he inherited a one-fourth interest in the land, and at his brother's death inherited another undivided interest therein.

2. **Homestead ⊜143—Right of survivor to occupy homestead excludes homestead claim by son.**

The right of a surviving husband to the exclusive occupation of the homestead for his life, given by Const. art. 16, § 52, prevents the acquisition of homestead rights in the same land by an adult son.

3. **Descent and distribution ⊜84—Conveyance held to include interest inherited from brother, as well as that inherited from mother.**

A conveyance reciting that grantor was the sole heir of his mother, and purporting to convey all his right in the described land, being an

undivided one-half interest inherited from his mother, conveys all the interest of the grantor in that land, which was less than a half interest, though he inherited a part of such interest from his brother.

**4. Deeds &lt;=&gt;90—Construction most favorable to grantee adopted, ambiguity existing.**

Where there is an ambiguity in a deed, of two constructions, the one most favorable to grantee will be adopted.

**5. Tenancy in common &lt;=&gt;45—Purchaser from one cotenant can have tract of which possession was taken, if no prejudice results to others.**

Where a deed executed by an owner of an undivided interest in a tract attempted to convey a specific portion of the tract, and the purchaser took possession under the deed and made valuable improvements, purchaser is entitled to the portion so conveyed; it being less than the portion to which her grantor was entitled, and the entire tract being substantially of equal value, except for the improvements, so that no prejudice would result thereby to grantor's cotenants.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action between Minnie Rettig and others and the Houston West End Realty Company. Judgment favorable to Houston West End Realty Company was affirmed by the Court of Civil Appeals (241 S. W. 614), and Minnie Rettig and another bring error. Affirmed.

Maco & Minor Stewart, and R. W. Houk, all of Houston, for plaintiff in error Rettig.

Louis, Campbell & Nicholson, of Houston, for plaintiff in error Jenkins.

Andrews, Streetman, Logue & Mobley, W. H. Ward, and E. H. Vasmer, all of Houston, for defendant in error.

GERMAN, J. Originally this suit, which was in the district court of Harris county, Tex., involved two 25-acre tracts of land and numerous parties. One of the tracts was known as the John Harris tract, and the other as the Harry Harris tract. As now before us, the case involves 7.81 acres of the John Harris tract, and the contestants are Minor Stewart and Mrs. Minnie Rettig, who will be designated plaintiffs in error, against West End Realty Company. Of the Harry Harris tract there is involved an interest of 3 acres, and the contestants for this are Minor Stewart and Mrs. Minnie Rettig, on the one hand, as against Mrs. Theresa Jenkins, on the other. In the trial court plaintiffs in error recovered nothing, and this judgment was by the Court of Civil Appeals for the First District in all things affirmed. 241 S. W. 614, 619. The facts are not now in dispute, and only three main questions are before us for determination. The facts relating to these questions will be stated in connection with each question as we consider them.

[1] The John Harris 25 acres was acquired by John Harris and his wife, Martha Harris, in 1879, was their community property, and they used it as their homestead up to the time of the death of each of them. Martha Harris died in 1900, leaving her husband and two children, Milton Harris and Taylor Harris, surviving her. Milton Harris died in 1905, leaving a wife, his brother Taylor, and his father as his heirs. John Harris, the father of Taylor Harris, died in 1918, after this suit was filed, leaving Taylor as his only heir. With the consent of his father and mother Taylor Harris built a house on this 25 acres of land in 1879, and lived there with his wife for such time and under such conditions, as found by the trial court, as would allow him to claim a homestead right in the land, provided he could do so, as a matter of law, in view of the facts hereinafter mentioned. As to the restrictions imposed by John Harris upon the use and occupancy of the land, the trial court made the following findings:

"That after the death of Martha Harris John Harris continued to live in the old home on the John Harris tract until his (John Harris') death, and that the John Harris tract was controlled by him until his death, and that Taylor Harris occupied and used only such part of it as John Harris let him use.

"That John Harris was not willing for Taylor Harris to have enough land for him to make a living on in the John Harris tract until his (John Harris') death, and that during all his lifetime John Harris asserted that this tract was his to do as he pleased with.

"That John did not at any time allow Taylor any specific or definite tract or portion of the John Harris 25 acres, but did permit Taylor to live in the house he had built on the land."

On November 27, 1909, Taylor Harris executed a deed to John T. Tullock, conveying his interest in the John Harris 25-acre tract, but his wife did not join in this deed. It is under this deed that the West End Realty Company now holds. In November, 1918, Taylor Harris and wife executed deed to Minor Stewart to an undivided interest of 3 acres in the John Harris tract and a deed to Mrs. Rettig to an undivided interest of 5 acres in each of the two tracts. Minor Stewart and Mrs. Rettig are claiming that the deed by Taylor Harris to Tullock, made in November, 1909, was void, because the land at that time was his homestead, and his wife did not join in the conveyance. If it was not his homestead, their claim as to the John Harris tract falls.

The conclusion of law filed by the trial court with reference to the validity of the deed is pertinent, because it includes additional finding that John Harris never did at

any time relinquish his homestead right in any part of the 25-acre tract, but intended his possession thereof to remain exclusive. This conclusion is as follows:

"I hold upon the findings of fact that Taylor Harris acquired no homestead interest in any part of the John Harris tract prior to his deed to Tullock, and that such deed was valid and conveyed not less than the amount of land claimed thereunder by Houston West End Realty Company, to wit, 7.81 acres, notwithstanding Taylor Harris' wife had not joined in said deed. This holding is predicated upon the constitutional provision under which John Harris, the community survivor, had the right to live upon and use as his homestead the entire 25-acre tract during the remainder of his life, and I hold as a matter of law that until John Harris relinquished this homestead right, in whole or in part, no other homestead right could attach to said land; his right under the Constitution being exclusive so long as he desired to have it remain exclusive."

Prior to 1900 Taylor Harris had no title whatever to any part of this land, and no interest in connection with it that is now of any value to plaintiffs in error. We are therefore unable to see how the rule that a tenant at sufferance, or one holding a leasehold estate in land, may claim an exemption right, can be of any benefit to them. At the death of his mother Taylor Harris inherited a one-fourth undivided interest in the land. Later he inherited a small undivided interest from his brother Milton. These interests he owned when the deed to Tullock was executed. At that time he was a tenant in common with his father, so far as title to the land was concerned, but his interest did not carry with it the right to demand partition, or to any use and possession whatever, except by the consent of his father.

[2] Section 52 of article 16 of our Constitution provides:

"On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

Prior to the adoption of this section the title to homestead and exempt property, when set aside to the widow and minor children, vested absolutely in them, to the exclusion of the adult children. One purpose of this section was to change this rule and permit adult children to inherit an interest in the homestead property, subject to the right of the surviving husband or wife and minor children to occupy and use it as a

homestead. Roots v. Robertson, 93 Tex. 372, 55 S. W. 308. The effect of this section, as applied to the present case, was to make Taylor Harris, after the death of his mother, a tenant in common with his father, so far as ownership of the land was concerned; but it did not confer on him two of the most important privileges usually held by those occupying the position of tenants in common, to wit, the right to compel a partition, and an equal right to the possession, use, and occupancy of the joint estate. It is indisputable that, so far as the right of use and occupancy of the homestead by the survivor is concerned, under this provision of the Constitution, the same is exclusive, or may be made so at will.

It is a long-established rule in our state that a homestead exemption may be established in land held by tenants in common, provided the rights of cotenants are in no manner prejudiced. However, this holding is based primarily upon the principle that each tenant in common has an equal right to the occupancy, use, and enjoyment of the estate, and may compel a partition of same. Therefore the vested interest of a tenant in common occupying the position of Taylor Harris is not sufficient to confer upon him the right to claim a homestead exemption. As we understand the rule, whatever the character of title that may be held by one claiming a homestead interest in land, to entitle him to make good such claim, such title must be accompanied by a present claim of right to occupy the land. In 21 Cyc. p. 503, it is stated:

"The interest in land sufficient to carry with it the privilege of exemption must be such as involves a present right of occupancy. Future estates, therefore, whether vested or contingent, will not support the claim; yet when the particular estate is determined, and the remainderman is entitled to immediate possession, he may claim his homestead in the premises, if his contingent interest has not been sold in the meantime by his creditors."

And again, in 15 A. & E. Enc. of Law (2d Ed.) p. 556, the rule is stated:

"To entitle a debtor to a homestead exemption he must, at least, have a possessory interest in the land claimed. There must be at least a present right of occupancy. * * * A homestead cannot exist in a remainder or reversion, since in such case there is no present right of occupancy. But it has been held that a remainderman may claim a homestead after determination of the particular estate, as against creditors who have failed to sell his interest on execution before determination of the particular estate."

In the case of Massillon Engine & Thresher Co. v. Barrow, 231 S. W. 368, this Section of the Commission determined almost this precise question, in holding that a son, living with his widowed mother upon land

which she claimed as her homestead, was precluded from asserting a homestead interest in the same land which she claimed as a homestead, for one claiming merely an interest in remainder is without any right to possession necessary to found a claim of homestead. In that case the son resided in the house with his mother, while in this instance Taylor Harris resided in a house separate from that occupied by his father; but, as this house was at all times under the dominion and control of his father, we are unable to see that this makes any difference in the application of the rule. We have again reviewed the question with painstaking thoroughness, and are convinced that John Harris, as the owner of the particular estate in the 25-acre tract, under the constitutional provision, had the exclusive right of possession, and so long as he saw proper to make that possession exclusive, as he unquestionably appears to have done to the time of his death, Taylor Harris could not acquire a homestead in the same tract of land. It follows, therefore, that it was not necessary, under the law, for the wife of Taylor Harris to join in the deed to Tullock in order to make it valid, and the same was effectual as a conveyance of his interest in the land. Tucker v. Dodson (Tex. Civ. App.) 245 S. W. 728; Hampton v. Gilliland, 23 Tex. Civ. App. 87, 56 S. W. 572; Greer v. Griffis-Newbern Co., 125 Ark. 456, 188 S. W. 1185; Kulbeth v. Drew County Lbr. Co., 125 Ark. 291, 188 S. W. 810; Brooks v. Goodwin, 123 Ark. 607, 186 S. W. 67; Roach v. Dance (Ky.) 80 S. W. 1097; Davis v. Brown (Tenn. Ch. App.), 62 S. W. 381.

The Court of Civil Appeals at Dallas, in the recent case of Tucker v. Dodson, supra, has, we think, clearly expressed the correct rule. In that case the father, who owned a one-half interest in the land and occupied it as his homestead, under the provisions of the Constitution, made a parol gift of a part of the land to his son, who owned an undivided one-twentieth interest, and the son went upon the land, made valuable improvements, and resided thereon as his homestead. He was permitted to claim a homestead right in that part of the land to which his father had surrendered complete control and which he had appropriated to his exclusive use. However, the court recognizes the rule we are here announcing in this language:

"Since appellant owned in fee simple a one-twentieth undivided interest in the land, he had the right of occupancy as between himself and all the other joint owners except his father. The latter under his homestead proprietorship alone could deny him occupancy. The homestead right in the father, so long as he desired to exercise it over the entire tract, excluded the assertion of a homestead interest by appellant. But since appellant's father could and did lawfully abandon that right as to the small tract to which he granted appellant all his title,

appellant established his homestead, according to the views expressed above, by living upon it and improving and using it as a home."

In the present case, the trial court found that John Harris did not at any time allow Taylor Harris any specific or definite tract or portion of the 25 acres, and during all his lifetime John Harris controlled the entire tract and asserted that it was his to do as he pleased with. It thus clearly appears that John Harris never relinquished his homestead right or his exclusive possession to any part of the tract, and the use of the land by Taylor Harris was entirely subordinate to the possession of John Harris under his homestead claim.

[3, 4] The deed by Taylor Harris to John T. Tullock contained this recitation:

"Know all men by these presents, that I, Taylor Harris, only child and sole heir of Martha Harris, deceased, * * * have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said John T. Tullock, all of my right, title, and interest, being an undivided one-half interest inherited as sole heir of Martha Harris, in and to the following described land and premises, to wit: 25 acres of land [describing the John Harris tract by metes and bounds]."

As shown above, at the date of this deed Taylor Harris was the only child of Martha Harris who was living. He actually owned 7.81 acres undivided interest in the 25-acre tract, of which 6¼ acres had been inherited from his mother and the balance from his brother Milton. Plaintiffs in error contend that this deed only conveyed the interest of 6¼ acres inherited by Taylor Harris from his mother. With this contention we cannot agree. Clearly it was the intention of Taylor Harris to convey all of his right, title, and interest in the 25 acres, up to and including an undivided one-half interest therein, if he had owned that much. The statement that it was the "one-half interest inherited as sole heir of Martha Harris" merely indicates the source of title, and is not a limitation or restriction on the interest conveyed, as the deed passed not only this particular interest, but all right, title and interest. Hatcher v. Stipe (Tex. Civ. App.) 45 S. W. 329 (writ denied); West v. Herman, 47 Tex. Civ. App. 131, 104 S. W. 428. If it be conceded that there is ambiguity in the deed, and that it is susceptible of two constructions, that one will be adopted which is most favorable to the grantee. Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930.

[5] The remaining question relates to the 3 acres of the Harry Harris tract. This 25 acres was at one time owned by John Harris, Mahally Harris, Abraham Harris, and Phyllis Marshall, each owning an undivided interest of 6¼ acres. These parties had the 25 acres surveyed and platted with a view of

making a partition, it being divided into four blocks, of 6¼ acres each; but the partition was abandoned and the plat was never recorded. Taxes having accumulated against the property, it was agreed that John Harris was to convey one acre out of each of the three lots owned by himself, Phyllis Marshall, and Mahally Harris, in order to pay the taxes due against the land. In pursuance of that agreement, on August 7, 1908, John Harris executed to Agnes Dow a general warranty deed conveying the following land:

"Three (3) acres of land out of the A. C. Reynolds league in Harris county, Tex., and being 1 acre each off the north end of the 6¼-acre survey for John Harris and the 6¼-acre survey Phyllis Marshall (Harris) and the 6¼-acre survey Mahally Harris, the same being a subdivision of the said A. C. Reynolds league, as per map and plat of said subdivision."

Mrs. Theresa Jenkins now claims this specific 3 acres under conveyances from Agnes Dow, which she has improved and is residing upon. It is admitted that this 3 acres, aside from the improvements placed thereon by Mrs. Jenkins, is of a uniform value with the other part of the tract. Plaintiffs in error contend that this deed had the effect to convey only 1 acre of the John Harris interest in this tract of land, as it was his intention to convey only 1 acre of his interest and 1 acre out of each of the interests of Phyllis Marshall and Mahally Harris. There is no evidence that Agnes Dow or Mrs. Jenkins knew anything about the agreement between these parties, and they had a right to rely upon the express provisions of the deed, which conveys a specific 3 acres out of the tract. John Harris owned an interest of 6¼ acres at the time the deed was executed, and, while this interest was undivided, yet he had the right to convey a specific part of the land, and his purchaser would be protected by having this specific part set aside to him, provided this could be done without prejudice to the other owners. Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935. Phyllis Marshall and Mahally Harris could not by parol agreement authorize John Harris to convey any part of their interest; no question of estoppel as against them being now presented. The trial court and the Court of Civil Appeals rightly decided that this conveyance by John Harris passed title to 3 acres of land.

It follows that the judgment of the trial court and the Court of Civil Appeals should in all things be affirmed, and we so recommend.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.