[Civ. No. 3536. Third Appellate District.—August 22, 1928.]

B. H. SPALDING, Respondent, v. CHARLES H. BENNETT et al., Appellants.

Peyton H. Moore for Appellants.

Barker & Keithly for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for broker's commissions for procuring a fifty-year lease of real property.

The complaint contains two counts, the first of which is based upon an alleged oral promise to pay a specified sum for services for procuring the lease, while the second count claims compensation upon a *quantum meruit*. The transaction is not within the provisions of the statute of frauds, since it was neither an agreement to purchase nor sell real estate, which, in the absence of a memorandum in writing, is prohibited by section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure. The complaint alleges that the respondent was a duly licensed real estate broker doing business in the city of Los Angeles; that the appellants were the owners of lot 1, block 7, of Wright's Subdivision of lots 78, 95 and 96 of McDonald's Tract of the city of Los Angeles; that on November 19, 1923, the appellants employed respondent to negotiate a fifty-year lease of said premises upon specific terms mentioned at $250 per month as rental for the first five years, $400 per month for the following five years and an increased rental of $100 per month for each succeeding five-year period until the termination of the lease; that the efforts of respondent resulted in securing the customers who subsequently executed said lease upon the exact terms specified by the appellants. The first count alleged that appellants

agreed to pay respondent for said services a sum equivalent to the amount fixed by the Los Angeles Realty Board schedule of broker's commissions for similar transactions. The second count prayed for judgment upon a *quantum meruit*. Upon trial the court found all the allegations of the complaint to be true; that the commissions which were fixed by the schedule of the realty board for such services were $4,225, and that said sum was also a reasonable compensation therefor. Judgment was thereupon rendered in favor of the respondent for the sum of $4,225, together with interest thereon, aggregating the sum of $4,814.04.

The appeal is based solely upon a charge that the findings of the court are not supported by the evidence. It is claimed that (1) there is no evidence of the employment of respondent as an agent to procure the lease; (2) there was no agreement to pay for such services, either a specified sum, or the reasonable value thereof, and (3) the respondent abandoned his employment and thereby waived his commissions.

There is no merit in these contentions. There is a conflict of evidence, but the record discloses ample testimony to support the findings and judgment of the court. It satisfactorily appears that the lessees first voluntarily came to the office of respondent inquiring regarding the prospects of securing a lease upon the identical property in question. Respondent sent two salesmen to appellants upon different occasions soliciting a listing of the property and an agreement of employment as agent to procure the lease. There is substantially no conflict as to the exact terms of the lease agreed upon. A promise to pay the compensation fixed for similar services by the realty board was clearly made. Respondent procured a written contract from the lessees, who agreed to all the terms required by appellants, which document also provided for the depositing of $5,000 as security for the faithful performance of the covenants of the lease. A check for $1,000 was actually delivered to the respondent by the lessees to bind the bargain. A controversy afterward arose between respondent and the appellants regarding the commissions to be paid, and this check and contract with the lessees were then destroyed. Appellants contend that this constituted an abandonment of the employment as brokers and a waiver of their claim for

compensation. Immediately thereafter the appellants entered into a lease of the premises with respondent's clients upon the exact terms specified, except that $5,000 deposit for the faithful performance of the terms of the lease was not required. ██ The appellants, however, may not complain because they have seen fit to accept a lease upon terms less favorable to themselves than the terms which were secured by respondent. (4 Cal. Jur. 606, sec. 39; 4 R. C. L. 322, sec. 59; 9 C. J. 600, sec. 89; *Arnold* v. *La Belle Oil Co.*, 47 Cal. App. 290, 297 [190 Pac. 815].)

██ Regarding the employment of respondent as the agent of appellants, Ruth Schauerman, respondent's saleslady, testified that she had a conference with both of the appellants in November, 1923, and that they specified the terms of the lease which they were willing to make, which conformed exactly to the terms of the lease subsequently executed by them, except as to the amount of deposit. She testified that appellants said "they would take care of the commissions; . . . they were willing to pay a commission—knew that a commission had to be paid." And in a subsequent conference during which she told them respondent had a client who would lease the premises upon the terms specified, appellants replied, "that it was fine that they would lease it, and if we could lease it and get those terms, it was perfectly satisfactory." This witness further testified that at the last-mentioned conference appellants said respecting the payment of commissions, "We have called the Realty Board and figured with them, and the commission is more than we expected it would be, but we would not ask you to cut it one penny." This appears to be a clear acknowledgment that appellants recognized their liability to pay for the services of their agent the amount fixed by the Los Angeles Realty Board for similar services. Mr. Ulm, another salesman of respondent, having procured the written contract with respondent's clients to lease the premises upon the terms specified, took this agreement, together with the $1,000 check above mentioned, to appellants, who carefully read it over in the presence of each other. Mr. Bennett then asked his wife: "Is that just the way we want it, Mamma?" To which she replied, "Yes." In discussing the commissions at this conference, Mr. Bennett further said: "Now, that commission is more than I thought (it would

be) when I gave Mrs. Schauerman the listing, but when I called up the board, I found it was about right, and I would not ask you to cut it one penny, but I can't sign it until I see my attorney.'' We are of the opinion that, fairly construed, the record discloses evidence clearly indicating that appellants acquiesced in the employment of respondent as their agent, and promised to pay him the amount, fixed by the Los Angeles Realty Board for similar services, as compensation. At least, it must be conceded that the foregoing evidence implies that they agreed to pay respondent some amount as compensation for his services in procuring a lease of the premises upon the specified terms. If the specific amount agreed upon may be said to be in doubt, still the judgment must stand because it represents the reasonable value of the services performed as indicated by both the pleadings and the proof in the case.

The appellants contend that their agreement to employ respondent as their agent and pay him commissions for his services was subject to the approval of their attorney, Mr. Byrnes, and that appellant's foregoing statement with respect to the lease, that ''I can't sign it until I see my attorney,'' confirms this claim. But we are of the opinion that the record, including the evidence heretofore quoted, indicates that appellants, without reservation, agreed to the specific terms of the lease, as well as to the payment of commissions for the agent's service. Both Ruth Schauerman and Mr. Ulm testified positively that the appellants did not state that the commissions for the broker's service must be satisfactory to their attorney. The inference which must be drawn from the foregoing statement of · Mr. Bennett that ''I can't sign it until I see my attorney,'' clearly indicates that he recognized the contract of employment, and desired to submit to his attorney the mere form of the lease, for their protection. It does appear that appellants' attorney, Mr. Byrnes, did believe that the contract of employment was within the statute of frauds and, therefore, void, and evidently because they considered the commissions excessive, they were warranted in repudiating the contract. Mr. Lockwood, one of the lessees, testified that Mr. Byrnes had said to him, ''Morally we owe the money, but he (the respondent) has nothing in writing, and legally he cannot get it, and we won't pay it.'' But upon appeal it is not

contended that the contract of employment is void because it was not reduced to writing or signed by the parties to be charged. ▆ From the testimony heretofore quoted it appears that the appellants conceded that the written contract of the lessees procured by the respondent was "just the way we want it," and that while the commissions exceeded their expectations, they had conferred with the realty board and found them to be about right, and, therefore, would not ask the respondent to cut them one penny. These concessions amount to an acknowledgment that respondent was the procuring cause of obtaining a written contract from the lessees upon terms entirely satisfactory to appellants, and a promise to pay commissions equivalent to the sum fixed by the realty board for such services. This being true, the respondent is entitled to recover his compensation in spite of the fact that the lease was finally executed between the parties thereto without the presence or aid of the respondent. ▆ Where a broker is the efficient cause of procuring a customer who is ready, willing, and able to lease property upon the terms specified by the owner in the contract of employment, or upon terms acceptable to the owner, he is entitled to his commissions. (4 Cal. Jur. 583, sec. 25; 4 R. C. L. 307, secs. 49, 50; *Twogood v. Monnette,* 191 Cal. 103 [215 Pac. 542].) When the customer procured by the agent is accepted by the owner and the lease is executed upon terms satisfactory to the owner, he is estopped from denying the ability or willingness of the customer to consummate the contract. (4 R. C. L. 309, sec. 49; *Twogood v. Monnette, supra; Rucker v. Hubler,* 56 Cal. App. 771 [206 Pac. 472].) ▆ After a broker has procured a customer willing and able to lease property upon terms acceptable to the owner, neither the principal nor the customer may defeat the claim of the broker to his compensation by concluding the transaction without the broker's aid. (9 C. J. 619, sec 99.) ▆ Since the fifty-year lease was actually executed between the appellants and the customers procured by respondent, upon terms acceptable to the owners, the mere destruction of the original contract to lease, and the deposit check for $1,000, in the absence of further testimony, is insufficient evidence to warrant a holding that the respondent thereby abandoned his employment and forfeited

his commissions. The record indicates just the contrary purpose, on the part of respondent.

The judgment is, therefore, affirmed.

Plummer, J., and Finch, P. J., concurred.