KEESEE v. BUSHART.

4-6588 · 158 S. W. 2d 915

Opinion delivered January 26, 1942.

*Pryor & Pryor* and *G. Byron Dobbs,* for appellant.

*Joseph R. Brown,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment quashing executions issued out of the circuit court of Sebastian county, Fort Smith District, on separate judgments rendered in said court against appellees in favor of appellants on March 7, 1939, growing out of an automobile collision. The executions were levied on lots three (3) and four (4), block one (1), Westminster Addition to the city of Fort Smith, which lots were of less than $2,500 in value, and less than one acre in area, and had upon them a five room house. A will was executed on November 30, 1938, by Thomas E. Bushart to his son, Carroll Bushart, and was probated after the testator's death on September 22, 1939, presumably remaining in the possession of the testator until his death, there being no evidence in the record to the contrary. Thomas E. Bushart was the owner of the property at the time of his death and had been the owner thereof and resided therein for many years up to the date of his death. Carroll Bushart lived in the home with his father practically all of his life and after his marriage in 1936, he and his wife continued to live with his father until June, 1939, when he and his wife rented a furnished place on Blair avenue and moved into it where they remained until three or four days after Carroll Bushart's father died, and then moved back to his father's home place. The property in question was situated on Grand avenue, in the city of Fort Smith. The property on Blair avenue, which Carroll Bushart rented and moved into about five months before his father died, was quite a distance from the Grand avenue property.

Carroll Bushart testified that he was engaged in the motorcycle and automobile repair and parts business while he was living with his father on Grand avenue and that the noise in operating same disturbed his father and out of consideration for his father's comfort, he and his wife rented the Blair avenue property and moved into it until he could liquidate his motorcycle business with the intention of moving back with his father when

he had done so; that when they moved into the Blair avenue property they left their furniture in his father's home, including their washing machine; that his wife continued to do the family washing at his father's home and that he frequently visited his father, but said that they ate and slept most of the time at the Blair avenue property; .that his father all along had promised to give him the Grand avenue property for a home, but after his mother died and he married in 1936, he stated that if they continued to live with him, he would will the property to Carroll Bushart. His exact testimony, with reference to the gift or the promise to make a will, is as follows:

"At my mother's death, Dad said stick together and it would always be my home as it had been always in the past. Q. Did he tell you then that he would give it to you, and it would be your home? A. Yes, sir." On cross-examination he testified: "Q. The understanding was that your father intended to leave it to you by will? A. Yes, sir."

Carroll Bushart and his wife were not actually residing in the Grand avenue property with his father, at the time of his death, and had not actually resided there with him since June, 1939. The judgments were rendered March 7, 1939, and were an outstanding lien on all property owned by Carroll Bushart and his wife from that date except such property as was exempt and not subject to a judgment lien or execution thereon.

Carroll Bushart testified that he did not get a deed from his father to the property and did not pay his father any consideration. except that he and his wife lived with his father under the promise that his father would make a will to him.

Since the judgments were outstanding at the time Carroll Bushart succeeded to the title under the will and since Carroll Bushart and his wife were not actually residing in the property at the time of the death of his father, we think the only question arising out of the facts detailed is whether Carroll Bushart acquired an interest in the property under his agreement with his father upon which he could establish a homestead. We

do not think under his own testimony he established any possessory right to the property. The interest he had was simply a contingent interest which would take effect in the future, that is, when Thomas E. Bushart died if Carroll Bushart, his son, should survive the father. There is nothing in the testimony that there was a completed gift of the property by the father to Carroll Bushart which took effect prior to the death of his father. A mere future contingent interest in the property is not such an interest as will support a claim for homestead. This court said in the case of *Brooks* v. *Goodwin,* 123 Ark. 607, 186 S. W. 67, quoting from 21 Cyc. 503, as follows: ''The interest in land sufficient to carry with it the privilege of exemption must be such as involves a present right of occupancy. Future estates, therefore, whether vested or contingent, will not support the claim. . . .''

We do not think under the facts Carroll Bushart could acquire a homestead right or establish a homestead right in the land as long as his father had a homestead right therein, nor do we think that Carroll Bushart acquired an exclusive possessory right paramount to the possessory right of his father by simply living with his father under the promise that his father would will him the property. This court said in the case of *Greer* v. *Griffis-Newbern Co.,* 125 Ark. 456, 188 S. W. 1185, that: ''Appellant cannot acquire a homestead in his own right, so long as there is an outstanding right of homestead in the lands existing in another.''

One must own and actually occupy a residence on land in order to establish a homestead right which would exempt it from judgments, attachments or execution liens. Ownership does not necessarily mean ownership in fee simple, but one may establish a homestead in property in which he has some possessory right. This, of course, means an exclusive possessory right to that of any other person. Carroll Bushart never acquired such a possessory right against his father, and he never established a homestead right in the property paramount to the outstanding homestead right in his father. His only interest in the land was a contingent interest dependent upon his

father's death and was clearly a future interest in case he survived his father. Of course, if Carroll Bushart had had a possessory interest upon which he could establish a homestead and had established same, this temporary removal to the Blair avenue property would not have forfeited his right, but not having a possessory right in the property upon which he could establish a homestead and did not establish a homestead, his attempt to establish a homestead by moving back to the property after he acquired the title thereto could not and did not interfere with the subsisting judgment liens upon it.

The court erred in quashing the executions against the land in question, and the judgment is, therefore, reversed, and the cause remanded with directions to the court to overrule the petitions to quash the executions.