[Civ. No. 6947.   Third Dist.   Sept. 27, 1943.]

W. E. ALBERTSON, Appellant, v. TULAR E. WARNER
et al., Respondents.

596

Wm. F. Rose, John Ralph Wilson and Carl E. Day for Appellant.

Hawkins & Hawkins & Cardozo and Jackson Maddux for Respondents.

ADAMS, P. J.—Appeal from a judgment for defendants after the sustaining of demurrers to plaintiff's second amended complaint without leave to amend.

Said complaint was in four counts. In the first, plaintiff alleged that he was, and is, a duly licensed real estate broker; that the defendants Warner, husband and wife, were the record owners of certain parcels of land in Stanislaus County, "particularly described in the mineral lease dated June 16, 1939, between Tular E. Warner and Mabel Warner as lessors, and Yuba Consolidated Gold Fields as lessee, a copy of which is hereto attached and marked Exhibit A, and made a part hereof"; that on June 28, 1938, said Warners had executed a deed of trust of the lands described in Exhibit A to certain named trustees, for the benefit of defendant The San Francisco Bank, to secure payment of a promissory note for $146,000. In subsequent paragraphs he alleged "that shortly prior to the 16th day of June, 1939, defendants Tular E. Warner and Mabel Warner orally employed plaintiff to procure a lessee of the property described in the mineral lease, ... to prospect and mine thereon for gold and other precious metals upon a royalty basis satisfactory to said defendants" and orally agreed that if plaintiff procured such a lessee that said defendants would pay to plaintiff when and as received 10 per cent of the royalties received by them from such lessee; that pursuant to and in reliance upon said agreements and promises, plaintiff contacted Yuba Consolidated Gold Fields, a corporation, and procured and produced said corporation to the Warners as a lessee of said property "for the purpose of prospecting and mining thereon for gold and other precious metals upon the basis of a royalty of 10 per cent of the amount of the gross recovery from said property ..."; that thereafter the matter of the execution of a lease by defendants to said Yuba Consolidated Gold Fields was submitted by plaintiff to the officers of defendant The San Francisco Bank and ap-

proved by it, and that said bank recognized the services performed by plaintiff in procuring said lessee and orally agreed with plaintiff that if the lease was entered into and royalties thereunder were paid to it pursuant to any assignment to it by defendants Warner or pursuant to the terms of the trust deed, the bank would pay to plaintiff 10 per cent of said royalties when and as received by it. It was further alleged that on June 16, 1939, a lease in writing was entered into between the Warners and the Yuba Consolidated Gold Fields (Exhibit A attached to the complaint), under the terms of which said lessee agreed to pay the Warners as rent and royalty 10 per cent of their gross recovery. On information and belief it was alleged that the bank had given its approval of the lease on the condition that defendants Warner assign to it all royalties payable under said lease, and that such assignment was thereafter made; also, on information and belief, that within two years prior to the commencement of this action said bank had received royalties amounting to $7,000 under said lease and assignment. And it was further alleged that by reason of the premises plaintiff was entitled to 10 per cent of said $7,000 and 10 per cent of all other royalties paid or which might thereafter be paid to said defendant bank and/or to the defendants Warner. Failure and refusal to make such payments on demand were asserted.

The allegations of the second count are similar to those in the first count except that it is alleged that the agreements were to pay plaintiff the reasonable and customary compensation for his services, and that such reasonable and customary compensation is 10 per cent of the royalties received.

The third and fourth counts are common counts for the reasonable value of services rendered by plaintiff, at the request of defendants, in obtaining a lessee of the property for prospecting and mining purposes upon a royalty basis, the third count alleging the reasonable value of such services to be 10 per cent of the royalties, and the fourth alleging such reasonable value to be $25,000.

The prayer of the complaint is for the sum of $25,000, or such other amount as may be determined to be due and payable to plaintiff; that it be adjudged that under the oral contract of the parties plaintiff is entitled to 10 per cent of all royalties heretofore paid and to be paid in the future by Yuba Consolidated Gold Fields under said lease to any of defendants; for general relief and for costs.

Exhibit A attached to said complaint and made a part

thereof is entitled "Mineral Lease," and thereunder the Warners, as lessors, lease and demise to the lessee for the purpose of prospecting and mining for gold and other precious metals, the lands therein described. Under its terms said lease is to commence on the date thereof and continue until all gold and other precious metals which are recoverable at a profit have been recovered from said lands, or unless sooner terminated under the terms thereof, and when terminated lessee is to execute to lessors a quitclaim deed conveying all of its interest in said lands. Lessee agrees to pay "as rent and royalty for the use and mining of said property," 10 per cent of gross recovery. Lessors reserve the right to use said lands for such agricultural purposes as will not interfere with the prospecting and mining activities of lessee.

To plaintiff's said second amended complaint defendant The San Francisco Bank demurred generally to each count. Defendants Warner demurred generally to each count. They also demurred to same on the ground that each such count contains a cause of action against defendants Warner and a cause of action against defendant bank, which causes were not separately stated, but this ground of demurrer is not urged upon this appeal.

The said demurrers were sustained without leave to amend, and judgment for defendants was thereafter entered.

The contention of respondents, which was apparently accepted by the trial court, is that the complaint is fatally defective in that it appears upon its face that the oral agreement relied upon by plaintiff is one authorizing an agent or broker to *sell* real estate for compensation or a commission, and that because of Civil Code, section 1624 (5) and Code of Civil Procedure, section 1973 (5) no recovery can be had thereon either on the express promise or on a *quantum meruit.* This contention is based upon the decision in *Dabney* v. *Edwards*, 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822], wherein it was held that a contract by a broker to sell oil leases, which leases provided that they were to continue as long as oil and gas were produced in paying quantities, was a contract for the sale of real estate, and that an oral contract to sell same was, therefore, invalid, within the provisions of the foregoing code sections. Respondents argue from this that as the lease which was executed by the Warners with Yuba Consolidated Gold Fields provides that it shall commence on the date thereof and "shall continue until all gold and other precious metals which are recoverable at a profit from the said lands (of

which the Lessee shall be the sole judge) have been recovered therefrom, or unless sooner terminated, as herein provided," the said lease was, in effect, a sale of real estate, and that although the complaint does not allege that the plaintiff was employed to secure a lessee under the terms of the lease eventually entered into, it must be concluded that the agreement between plaintiff and the Warners was that he was to secure a lessee upon those terms, and that, therefore, the agreement is invalid because it was oral; that the complaint alleges that plaintiff was to procure a lessee upon a royalty basis satisfactory to the Warners, that the lease was executed shortly after the employment of plaintiff, and that this "compels the conclusion that a mining lease for an indefinite term, and not any other kind of lease" was what plaintiff's employment contemplated.

Appellant contends that the agreement alleged is purely an agreement to *lease* real property which is not required to be in writing; that it is merely one to procure a lessee and not a lessee of a particular kind nor a lessee for an indefinite term; that he procured a lessee, and the fact that the lease subsequently executed by the parties, after plaintiff had performed his part of the agreement, was a lease for an indefinite term or even a lease under which a portion of the real property was to be extracted, could not have the effect of depriving plaintiff of his right to compensation; and that defendants could not, by effecting such a lease, deprive him of his right to compensation for services already rendered in securing a lessee.

■ It is apparently conceded by respondents that an agreement authorizing or employing an agent or broker to *lease* real property for compensation or a commission, need not be in writing. The authorities so hold. (*Lind* v. *Huene,* 205 Cal. 569 [271 P. 1087] ; *Spalding* v. *Bennett,* 93 Cal.App. 577 [269 P. 948] ; *Edgecomb* v. *Callahan,* 132 Cal.App. 248 [22 P.2d 521].)

The agreement alleged in each count of plaintiff's complaint is that plaintiff was to procure a lessee of the property described, "to prospect and mine thereon for gold and other precious metals upon a royalty basis satisfactory to said defendants"; that said defendants "agreed that if plaintiff procured such a lessee that said defendants . . . would pay to plaintiff when and as received 10% of the royalties received by them from such lessee"; and that plaintiff contacted the Yuba Consolidated Gold Fields and procured

and produced said corporation to defendants as a lessee of said property "for the purpose of prospecting and mining thereon for gold and other precious metals upon the basis of a royalty of 10% of the amount of the gross recovery from said property"; that thereafter a lease was entered into between the parties under the terms of which the lessee agreed to pay a royalty of 10 per cent. It is nowhere alleged that the Warners desired or required or that the plaintiff agreed with the Warners to procure a lessee for an indefinite term or a lessee who would take the property under the terms of the lease which was subsequently entered into, or that it was the intention or within the contemplation of the Warners or plaintiff that a lease for an indefinite term should result from plaintiff's efforts, or that Yuba Consolidated Gold Fields when produced was willing to become a lessee only on condition that an indefinite term be agreed upon with lessors. In this respect the agreement alleged by plaintiff differs materially from the agreement sought to be enforced in the Dabney case, for there the agreement was, specifically, an agreement to *sell* leases already in existence, which leases—the things agreed to be sold—were held to be real property. If plaintiff's agreement was merely an agreement to secure a lessee of the property, without any provision as to the length of the term for which such lessee should agree to take the property, then it cannot be said that such agreement was invalid because oral; and the fact that the lease subsequently entered into may have had the effect of conveying real estate could not deprive plaintiff of his right to compensation for the services performed in securing a lessee.

The question before the court is whether, upon its face, plaintiff's complaint states a cause of action. If it does the trial court erred in sustaining the general demurrers thereto. And, without determining whether, under the decision in *Dabney* v. *Edwards, supra,* the lease actually entered into effected a *sale* of *real estate* within the meaning of such terms as used in subdivision 5 of section 1624 of the Civil Code, we are of the opinion that it cannot be said that plaintiff's complaint does not state a cause of action so as to be subject to a general demurrer, at least insofar as a case is made out against the defendants Warner.

Respondents make a further contention, to wit, that in *Stone* v. *City of Los Angeles,* 114 Cal.App. 192 [299 P. 838], the court held that an oil lease is a sale of a part of the freehold; that, therefore, any mineral lease which contem-

plates a removal of oil or other mineral substance from the land leased constitutes a sale of a portion of the real estate of the lessor, and that any broker's agreement to procure such a lease must be in writing. This contention is apparently disposed of by the court in *Dabney* v. *Edwards, supra,* where the court points out (page 5) that subdivision 5 of section 1624 of the Civil Code does not apply to the sale of "an interest in real estate." And in that very case the oil leases providing for a definite term were held to be chattels real—personal property—and it was decided that the broker's oral agreement to sell these leases was enforceable if said agreement was severable.

Coming now to the allegations of plaintiff's complaint in reference to defendant The San Francisco Bank, it is contended by this defendant that the complaint does not contain any allegations showing that the alleged promise was supported by a good and valid consideration, and that it therefore fails to state a cause of action against said bank. The allegations of the first and second counts are that after plaintiff had procured Yuba Consolidated as a lessee the matter of the execution of a lease by the Warners was submitted by plaintiff to the officers of the bank, for its approval, and said bank expressed its satisfaction over the prospect of obtaining Yuba Consolidated as a lessee, "approved the execution of said lease, recognized the services performed by plaintiff in endeavoring to procure, and procuring, said Yuba Consolidated Gold Fields as a lessee of said property and orally promised and agreed to and with plaintiff that if a lease of said property was executed and entered into" between defendants Warner and Yuba Consolidated and any royalties under said lease were paid over to said defendant The San Francisco Bank, pursuant to any assignment thereof by the Warners, then it would, out of the royalties thereafter paid to it, pay plaintiff "for his services rendered and which might thereafter be rendered," 10 per cent of said royalties as and when received. It is then alleged on information and belief that an assignment was made by the Warners to the bank, and that the bank had received $7,000 in royalties which had been applied by it to the reduction of the indebtedness of the Warners. It is not alleged in these counts that plaintiff agreed to perform or did perform any further services, and in view of his contention that he was merely employed to procure a lessee and that he became entitled to his commission when he had produced Yuba Consolidated as lessee,

the conclusion follows that he did not perform further services in the matter, nor promise the performance of further service; and there is no allegation that the services which he had already performed were rendered pursuant to any request by the bank. These counts, therefore, fail to state a cause of action against said defendant bank. (*Royer* v. *Kelly*, 174 Cal. 70 [161 P. 1148] ; *Ryan* v. *Walker*, 35 Cal.App. 116 [169 P. 417] ; *Estate of McConnell*, 6 Cal.2d 493 [58 P.2d 639].)

The third and fourth counts of plaintiff's complaint, however, differ from the first two in that they allege that within two years preceding the commencement of the action plaintiff rendered services as broker and real estate agent to defendants Warner and the bank "at their and each of their, special instance and request," which services consisted of securing a lessee of the property owned by the Warners. Then follow allegations as to the reasonable value of said services and defendants' refusal, on demand, to pay for same. Such allegations are sufficient as against a general demurrer. (*Cusick* v. *Boyne*, 1 Cal.App. 643, 645 [82 P. 985] ; *Aydelotte* v. *Billing*, 8 Cal.App. 673, 675 [97 P. 698].) As stated in 6 California Jurisprudence 206:

"In an action on the common counts for goods sold and delivered, and for services rendered, the consideration is implied and it is not necessary to allege it specifically in the complaint." (Citing *McFarland* v. *Holcomb*, 123 Cal. 84 [55 P. 761] ; *Krieger* v. *Feeny*, 14 Cal.App. 538 [112 P. 901].)

Respondent bank, in its brief, does not question the sufficiency of such common counts as pleadings, but asserts that where a brokerage contract is involved, and is unenforceable because not in writing, the device of a common count cannot be employed to evade the bar of the statute. (Citing *McCarthy* v. *Loupe*, 62 Cal. 299, and *Gould* v. *Otto*, 81 Cal. App. 409 [254 P. 272].) Those cases hold that an oral contract to *sell* real estate is invalid because of the statute of frauds, and that in the absence of *proof* of a written contract a broker cannot recover on a *quantum meruit* for services rendered in making such a *sale*. But the common counts in this complaint do not allege services rendered in making a sale, but in securing a lessee; and as an agreement employing a broker to lease real property is not, as hereinbefore stated, within the statute of frauds, it cannot be said that these counts fail to allege a cause of action as against a general demurrer. Each count stands on its own allegations,

unaffected by those contained in other counts. (*Penziner* v. *West American Finance Co.,* 133 Cal.App. 578, 582 [24 P.2d 501].)

We conclude that each count of plaintiff's complaint states a cause of action against the defendants Warner, and that the third and fourth counts state causes of action against the defendant bank. Accordingly, the judgment is reversed.

Peek, J., and Thompson, J., concurred.

Reporter's Note: On October 9, 1943, the judgment and opinion were modified to read as above.