273 P.2d 181

## WOOLLEY v. WYCOFF.

No. 8046.

Supreme Court of Utah.

July 28, 1954.

330

King, Anderson & Durham, Salt Lake City, for appellant.

Owen & Ward, Dean W. Sheffield, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant Milton S. Wycoff asked the plaintiff Robert P. Woolley, a licensed real estate broker, to procure a tenant for a ten-year lease on a certain warehouse in Salt Lake City. Plaintiff procured the tenant who was ready, willing and able to rent the property, but no lease was given because the defendant Wycoff failed to complete the purchase of the property which he was negotiating. Mr. Wycoff refused to pay the plaintiff for the services rendered, claiming that the contract by which he engaged Mr. Woolley to obtain the tenant was unenforceable because it was not in writing. The trial court gave judgment for the plaintiff, from which defendant appeals.

It is defendant's contention that plaintiff cannot recover from him for broker's services in procuring the tenant because of the provisions of the Statute of Frauds:

U.C.A. 1953, § 25-5-4, " * * * every agreement shall be void unless * * * [it] * * * is in writing subscribed by the party to be charged * * *.

"(5) * * * authorizing or employing an agent or broker to purchase or sell real estate * * *."

The question to be determined is whether the employment of Mr. Woolley to procure a renter for the warehouse is an " * * * agreement * * * to purchase or sell real estate * * *." within the meaning of this section.

It certainly must be conceded that the first blush impression is that mere rental of property should not be considered as a "purchase or sale of real estate." This is in accord with the common law principle that a lease was personal property,[1] and under modern statutes it is generally held that the term "real estate" does not cover leases or rental agreements.[2] Defendant urges, however, that the cases under which the term "real estate" is held not to include "leases" are to be distinguished by reason of the difference in general construction statutes. He cites as an example the California statute which defines real property as "coextensive with lands, tenements, hereditaments,"[3] and contrasts it with the comparable section of our code, 68-3-12, which provides:

"In the construction of these statutes the following rules shall be observed, unless such construction would be in-

1. 32 Am.Jur. 39.
2. Myers v. Arthur, 135 Wash. 583, 238 P. 899; O'Neill v. Wall, 103 Mont. 388, 62 P.2d 672; Dabney v. Edwards, 5 Cal.2d 1, 53 P.2d 962, 103 A.L.R. 822, 833. A different result is reached where the statute includes "interests in real property." See 103 A.L.R. 833.
3. Deerings Cal.Civ.Proc.Code, § 17.

consistent with the manifest intent of the legislature or repugnant to the context of the statute:

\* \* \* \* \* \*

(10) "The terms 'land,' 'real estate' and 'real property' include land, tenements, hereditaments, water rights, *possessory rights* and claims." (Emphasis added.)

Defendant reasons that our inclusion of the emphasized term "possessory rights" which is absent from the California and other similar statutes, makes our law different because, he argues, a lease is a "possessory right" and hence it is "real estate" as that term is used in Section 25-5-4(5). While this is admittedly a somewhat plausible argument we cannot agree that Section 68-3-12, quoted above, brings a lease or rental within the provisions of Section 25-5-4(5) which includes only a "purchase or sale of real estate."

■ General construction statutes are purposed toward aiding in the administration of law, and like other statutes in our code " \* \* \* are to be liberally construed with the view to effect the objects of the statutes and to promote justice."[4] It is undoubtedly true that they should be given

consideration in interpreting any of our statutes including 25-5-4(5) here in question, but their purpose is not to distort the plain words and meaning of a statute by making a contract for *rental* equivalent to a *sale* or *purchase* of real property. This was expressly stated by the lawmakers in the general construction statutes themselves. The definition of the term "real estate" in sub-section 10, including "possessory rights" is subject to the prior limitation in 68-3-12, " \* \* \* the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute."

It is doubtful that the term "possessory right" as used in the general statute defining real estate was intended to mean the type of right to possession one acquires under rental or lease. The cognate terms used in the statute, which may be considered in determining each other's meaning, all relate to some claim of ownership in property. The decisions which deal with "possessory rights" in the technical sense refer to acquisition of rights by possession of a certain character or duration[5] and usually such term concerns reference to interests in public lands.[6] For example, our neighboring

---

4. Section 68-3-2, U.C.A.1953.

5. Keesee v. Bushart, 203 Ark. 668, 158 S. W.2d 915, and cases cited in note 6.

6. E. G. Hyndman v. Stowe, 9 Utah 23, 33 P. 227; Lavagnino v. Uhlig, 26 Utah 1, 71 P. 1046; Gilcrest v. Bowen, 95 Mont. 44, 24 P.2d 141; Cheney v. Minidoka County, 26 Idaho 471, 144 P. 343; Hall v. Blackman, 8 Idaho 272, 69 P. 19; Johnson v. Hurst, 10 Idaho 308, 77 P. 784. The term was common in mining law. See e. g., Martins Mining Law and Land Office Procedure, p. 217, and Harris' Public Land Guide, p. 419.

state of Idaho has said that a possessory right under their Civil Code is "a squatter's right on unsurveyed land";[7] while we have so denominated the right acquired by the locator of a mining claim;[8] and our legislature labeled the chapter of our code dealing with the acquisition of title to public land by enclosure and occupancy by the name "Possessory Rights."[9] The nature of the rights just spoken of are significantly different from a lease or a rental where one holds by permission for a limited time under, and not adverse to, some other title holder.

The idea that "possessory right" implies some claim of permanent right or interest in the property as contrasted with mere temporary privilege of occupancy under rental is also more consistent with the traditional concept of real property and the context of 25–5–4(5) which includes only transactions involving the *"purchase or sale* of real estate." It thus appears that the strong likelihood is that the Legislature did not intend a mere rental or lease of property to be within the meaning of the term "real estate." If it had, there could of course be no distinction between a rental for a period of one month, or a period of many years.

However, even if we should concur with the defendant in making the doubtful assumption that a rental agreement is "real estate" on the ground that it is a "possessory right," we are still met with the clear language of Section 25–5–4(5) upon which defendant relies. It declares void only agreements to " * * * purchase or sell real estate * * *." A *sale* is certainly something fundamentally very different from *rental* of real property.[10] The defendant did not employ plaintiff to procure a purchaser, but a lessee. Therefore the transaction did not involve a contract authorizing plaintiff to "purchase or sell".

Although it may be that there is as good reason why the Legislature should have included agreements for rental of property in the statute requiring such agreements to be in writing, as there is for sale, they did not do so. They announce the policy; we interpret it. For us to so interpret the statute that the words "purchase or sell" are equivalent to "rental" is "inconsistent with the manifest intent * * *" expressed by

7. Cheney v. Minidoka County, supra. See also Hyndman v. Stowe, supra.

8. Lavagnino v. Uhlig, supra.

9. R.S.U.1898, § 1967. This chapter heading was inserted by a code commission to which the Legislature delegated the authority to " * * * revise and codify all the laws of this State, and * * * rewrite the same and divide them into appropriate parts and arrange them under appropriate titles, chapters and sections; * * *" Laws of Utah, 1896, Ch. LXXXV, § 4.

10. Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Chicago Auditorium Ass'n v. Cramer, D.C., 8 F. 2d 998; Spalding v. Bennett, 93 Cal.App. 577, 269 P. 948; Burt v. Brownstone Realty Co., 95 N.J.L. 457, 112 A. 883.

the statute and would amount to extending its coverage by judicial legislation.

 Accordingly, we hold that a contract employing a real estate broker to procure a lessee for real property does not fall within the provisions of Section 25–5–4(5) requiring an agreement authorizing a broker to purchase or sell real estate to be in writing. It follows that the trial court correctly ruled that the contract in question here is not void.

Judgment affirmed. Costs to respondent.

McDonough, C. J., concur.

HENRIOD, Justice (concurring).

I concur on the sole ground that (in my opinion) the facts of this case do not come within the intended meaning of the phrase "purchase or sell" real estate, found in Title 25–5–4(5), U.C.A. 1953.

WADE, Justice (dissenting).

I dissent. In my opinion the oral contract comes within the provisions of Section 25–5–4(5), U.C.A. 1953. I am aware that under the common law a lease for a term of years, no matter for how long, was not "real estate" and that some states under statutes similar to ours, notably California and Washington, as pointed out in the prevailing opinion, have held that agreements employing brokers to obtain leases for a term of years are not within the statute because such leases are not "real estate."

However, I do not believe the California and Washington decisions are helpful in construing our statute because neither California nor Washington has a general construction statute which defines "real estate" as including possessory rights and claims.

Although the prevailing opinion's conclusion that "possessory rights and claims" as used in Section 68–3–12(10), U.C.A. 1953, "in the technical sense refer to acquisition of rights by possession of a certain character or duration and usually such term concerns reference to interest in public lands" is not illogical. I cannot agree that the term "possessory rights and claims" under Section 68–3–12(10) is restricted to such an interpretation and does not include leases of real estate, but only such possessory rights which refer to some claim or ownership in property. Under the common law "tenements" included terms for years and certainly leases may be terms for years. So the prevailing opinion's conclusions that because the section enumerates "land," "tenements," and "hereditaments" it is logical to assume the term "possessory rights and claims" refer to some ownership of real property, does not necessarily follow.

I believe there is nothing inconsistent with the manifest intent of the Legislature if we should determine that "real estate" includes leases of real property under the provisions of Section 25–5–4, nor is such an interpretation repugnant to the context of the statute. Although a literal reading

334

of this section might preclude the inclusion of a transaction such as we have here, that is the employment of the broker to procure a tenant to whom appellant could lease the property, rather than to employ the broker "to purchase or sell real estate for compensation" the transaction involved is really not different from the one in which the agent or the broker is employed to find a seller or purchaser. The services are the same in both instances. In one the ultimate result is a lease and in the other a conveyance of a lease already made to another person, but the person dealing with the real estate broker in both cases procures a lease, and as far as the purposes of the statute are concerned the reasons for requiring the contract of employment to be in writing are just as cogent in one case as in the other. There is no more reason for the Legislature to require that the services a real estate broker gives in procuring a sale of real estate must be in writing, as we have held in Case v. Ralph, 56 Utah 243, 188 P. 640, which ruling we have approved in Baugh v. Darley, 112 Utah 1, 184 P.2d 355, than there is to require that the same type of services given in procuring a lease should be in writing. The same reasons for enacting the statute to cure whatever evils the Legislature sought to cure in oral agreements to employ real estate brokers would apply in both instances. I, therefore, think that a contract to employ a real estate broker to procure a lease of real property comes within the provisions of Section 25–5–4(5) U.C.A. 1953.

MARTIN M. LARSON, D. J., concurs in the dissenting opinion of WADE, J.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.